## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

---

AMANDA WOOD,
    Plaintiff.

v.

CITY OF SAN ANTONIO, TEXAS,

SAPD OFFICER MARTHA MARTINEZ,

SAPD OFFICER J. ORTIZ,

BEXAR COUNTY, TEXAS,

JOHN DOE JAIL SUPERVISOR,

JANE DOE DEPUTY JAILER,
    Defendants.

---

FILED

FEB 2 6 2021

CLERK. U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
            DEPUTY

Civil Cause No.

SA21CA0187XR

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES Plaintiff AMANDA WOOD, who submits her Original Complaint pursuant to 42 U.S.C. 1983, the United States Constitution, *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978), 42 U.S.C. 1985, and 42 U.S.C. 1988(b).

1

# I.  CASE SYNOPSIS

This is a lawsuit predicated upon violations of Plaintiff Amanda Wood's 4th and 14th Amendment rights of the United States Constitution. These were manifested through excessive force, an unlawful seizure, and an unlawful search while under the authority of the San Antonio Police Department Defendants. Subsequently, Plaintiff was subjected to excessive force, an unreasonable search, and oppressive conditions of confinement while in the Bexar County Jail. Concomitantly, several City and County policies caused violations. Officers Ortiz and Martinez falsely accused, arrested, and charged Amanda Wood with the Misdemeanor possession of Marijuana. The case was dismissed by the Bexar County District Attorney's Office on May 30, 2019, on its own accord. Thus, Plaintiff Amanda Wood's Constitutional and common law rights were violated as a citizen, as a "suspect," and as a pre-trial detainee. Plaintiff Amanda Wood was vindicated through the District Attorney's dismissal of the charge.

Individually, the law enforcement Defendants committed Constitutional violations. In part, these were caused by their own malfeasance. Conversely, some of the transgressions were owing to City of San Antonio, Texas and Bexar County, Texas policies, customs, and practices. Plaintiff Amanda Wood suffered physical injuries, physical deprivations, baseless criminal charges, constraints on her liberty, emotional harm, and incurred legal expenses fighting the criminal charge.

# II.  SUBJECT MATTER JURISDICTION

This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331, 42 U.S.C. 1983, 42 U.S.C. 1985, and the United States Constitution. The amount in controversy exceeds $75,000.

## III.      VENUE AND PERSONAL JURISDICTION

Venue is proper pursuant to 28 U.S.C. 1391(b)(1)(2)(c)(1) as all of the parties reside in this Western District of Texas and Bexar County, and all of the acts referred to occurred in Bexar County, Texas.

## IV.                    PARTIES

**a.**     AMANDA WOOD is the Plaintiff, a natural person, and the recipient of the unlawful seizure, arrest, searches, and excessive force. AMANDA WOOD lives in San Antonio, Texas. Hereafter, Plaintiff will be referred to as "WOOD' for the sake of brevity.

**b.**     CITY OF SAN ANTONIO, TEXAS is a Defendant, an artificial person, a municipality, and a government subdivision. The CITY OF SAN ANTONIO exists and resides in Bexar County, Texas. Hereafter, Defendant will be referred to as "CITY' for the sake of brevity. CITY runs the San Antonio Police Department, and employs the Police personnel in this suit.

**c.**     MARTHA MARTINEZ is a Defendant, a natural person, a Texas Peace Officer, and an employee of Defendant CITY. Hereafter, Defendant will be referred to as "MARTINEZ" for the sake of brevity.

**d.**     J. ORTIZ is a Defendant, a natural person, a Texas Peace Officer, and an employee of Defendant CITY. Hereafter, Defendant will be referred to as "ORTIZ" for the sake of brevity.

**.e.**   BEXAR COUNTY, TEXAS is a government and political subdivision. It encompasses CITY and the surrounding geographic area of the events in question. Hereafter, Defendant will be referred to as "COUNTY" for the sake of brevity. COUNTY runs the Bexar County Jail, and employs Deputy Jailers to oversee the prisoners and detainees.

**f.**   JOHN DOE is a COUNTY Jail Supervisor. His name is unknown at this time. It is hoped Discovery will reveal his identity. Hereafter, Defendant will be referred to as "JOHN" for the sake of brevity.

**g.**   JANE DOE is a COUNTY Jailer. Her name is unknown at this time. It is hoped Discovery will reveal her identity. Hereafter, Defendant will be referred to as "JANE" for the sake of brevity.

## V.                    SERVICE OF PROCESS

**a.**   CITY OF SAN ANTONIO, TEXAS may be served process by serving the City Manager Erik Walsh at 115 Plaza de Armas, 2nd Floor, San Antonio, Texas 78205.

**b.**   MARTHA MARTINEZ may be served process at her place of employment, the San Antonio Police Department South Substation at 711 West Mayfield, San Antonio, Texas 78211.

**c.**   J. ORTIZ may be served process at his place of employment, the San Antonio Police Department South Substation at 711 West Mayfield, San Antonio, Texas 78211.

**d.**   BEXAR COUNTY, TEXAS may be served process by serving the County Judge Nelson Wolff at 101 West Nueva, San Antonio, Texas 78205.

**e.**   JOHN DOE's identity is unknown. Plaintiff hopes that will be revealed in Discovery.

**f.**   JANE DOE's identity is unknown. Plaintiff hopes that will be revealed in Discovery.

## VI.                          FACTUAL ALLEGATIONS

**(1)**   In the early morning hours of February 27, 2019, Plaintiff WOOD was at a friend's house off Enrique Barrera Parkway. This friend had his wife and grandchildren in his front yard. The friend, "Henry," was welding a broken section of his front yard fence. WOOD had parked her car in Henry's yard, which was quite large. After a short while, a San Antonio Police cruiser pulled up, with lights flashing and blaring sirens. Defendants ORTIZ and MARTINEZ exited the car. Immediately, ORTIZ pulled his service weapon and pointed it at Henry. Henry had on a welding mask and was holding a welding torch. Thus, it was fairly obvious what he was doing. At this point, WOOD became concerned ORTIZ might shoot Henry. So, she identified herself to ORTIZ, and told him the welder was the property owner. ORTIZ then pointed his weapon at WOOD's head. Henry became concerned for his wife and grandchildren, and ushered them inside his house.

**(2)**   At this point, WOOD, ORTIZ, and MARTINEZ were the only persons outside. WOOD asked ORTIZ why he was pointing a weapon at her head, and why ORTIZ had pointed the gun at the property owner's face? ORTIZ replied, "he thought it was suspicious working on a fence that early." At this point, Henry came back outside without his welding mask. ORITZ then remarked, "why did you run off Henry?" This indicated that ORTIZ knew Henry, and knew Henry was the property owner. In fact, ORTIZ knew Henry and knew the residence was his.

(3)   Henry replied, "because you pointed a weapon at me, and I was worried about my wife and grandchildren." WOOD took ORTIZ to task for pointing a loaded weapon at their heads, and for overreacting to an innocuous situation. WOOD proclaimed that ORTIZ had no right to intrude upon them and threaten them with a gun. After a short while, ORTIZ directed WOOD to submit to handcuffing and arrested her. ORTIZ and MARTINEZ patted WOOD down, and removed her car keys and personal effects. WOOD was outside of her vehicle, which was locked. ORTIZ took the car keys over WOOD's objections, and entered into her locked vehicle.

(4)   WOOD asked ORTIZ why she was being arrested. ORTIZ replied, "because you have a smart mouth." ORTIZ then proceeded to rummage through WOOD's vehicle, over her objections. MARTINEZ also entered the vehicle, and commented on its "dirtiness." MARTINEZ asked why WOOD's vehicle was so unkept. WOOD replied, "because I have friends who ride in it." ORTIZ became agitated because he could not find anything illegal, or any contraband. So, he concocted the "discovery of .1 gram of Marijuana." That equates to 1/300 an ounce.

(5)   ORTIZ had placed the handcuffs exceedingly tight on WOOD's wrists, which cut into her skin and nerves. WOOD's wrists were also handcuffed behind her back, which contorted her shoulders, causing much pain. WOOD requested ORTIZ loosen the handcuffs, and handcuff her wrists in front of her body. ORTIZ refused, indifferent and oblivious to the discomfort WOOD experienced.

(6)   Before WOOD was placed in ORTIZ' cruiser, both ORTIZ and MARTINEZ threatened WOOD. ORTIZ and MARTINEZ demanded that WOOD, "tell them where the drugs were, or it's going to get rough for you." Their tone implied physical violence against WOOD, who was handcuffed and vulnerable. WOOD replied, "I have no drugs, or anything else illegal in my car." Thus, all ORTIZ had was his fabrication of .1 grams of Marijuana. ORTIZ placed WOOD in his cruiser, and drove her to the Magistrate's Office downtown.

(7)  At the Magistrate's Office, ORTIZ continued his abuse of WOOD. ORTIZ repeatedly grabbed WOOD, jerking her up and down. There, ORTIZ even tightened the handcuffs to cause additional pain and discomfort. From there, ORTIZ and MARTINEZ drove WOOD to the Bexar County Jail. At the Jail, ORTIZ encouraged the Jail staff to 'be rough' with WOOD, and said that WOOD was a 'drug smuggler.'

(8)  At the Bexar County Jail, Supervisor JOHN recommended a strip search and body cavity exploration of WOOD. JOHN acted under the authority and color of Texas law and suggested Jailer JANE conduct a body cavity search of WOOD. WOOD was forced to strip, bend over, and expose her genitalia and body cavities. After a thorough survey, no contraband was found in WOOD's body. WOOD felt utter degradation and humiliation after being poked, prodded, and fondled by Jailer JANE.

(9)  After the strip search and body cavity exploration, WOOD was not processed as others normally are. Rather, WOOD was placed in a frigid, isolated room for 16 hours. WOOD was not allowed to drink water, or go to the restroom. WOOD still had ORTIZ' handcuffs on her wrists, which were still behind her back. The pain from the handcuffs, and contorted shoulders pulsated. Every so often, Supervisor JOHN would come in and yank WOOD up or down from her seat by her shoulders. Supervisor JOHN would raise WOOD up, then slam her back down into her chair. WOOD felt like a puppet, helpless, and controlled. WOOD had to make a conscious decision as to whether to soil her clothes. WOOD's requests to use the restroom, or drink water were refused. Certainly, WOOD's request for something to eat was rejected out of hand. WOOD asked for the handcuffs to be removed, or loosened. That request fell on deaf ears. WOOD also requested medical care for the cuts into her wrists and nerves. The frigid temperature made the confinement unbearable, and impossible to sleep or rest. WOOD meekly asked if the Jailers could turn off the air condition, or provide her with a blanket. Categorically, all of WOOD's requests were denied. WOOD's conditions of confinement were designed to cause discomfort, and to punish her.

7

**(10)** THE CITY OF SAN ANTONIO, TEXAS, has and oversees the San Antonio Police Department (SAPD). This is a large municipal agency which employs Defendants ORTIZ and MARTINEZ. CITY is responsible for the SAPD's operation and control. The CITY has formal policies, and informal customs and practices which serve to violate citizens' Constitutional rights. CITY fails to properly Train its police officers. SAPD Officers are not taught about rudimentary Constitutional law, suspect rights, or 4th Amendment protocols of investigatory stops, searches, and seizures. The results are categorical violations of suspects' 4th Amendment rights. Suspects are stopped, searched, and arrested without a lawful basis. SAPD Officers then initiate criminal complaints based upon their illegal searches and seizures. CITY fails to properly Supervise its officers. SAPD Officers are given carte blanche to initiate unlawful contacts with citizens, and then to initiate bogus criminal charges based upon manufactured, or illegally seized evidence. Essentially, the SAPD rank and file have no accountability for violations of citizens' rights. CITY fails to Discipline its officers. SAPD Officers are virtually immune from repercussions or recriminations. The rank and file are permitted to violate citizens' and suspects' Constitutional rights with impunity. SAPD Officers are permitted to arrest and seize citizens for no reason, or invalid reasons. SAPD Officers are allowed to assault citizens and suspects who provide no resistance. Indeed, SAPD Officers are wantonly permitted to use gratuitous deadly force against the public. WOOD was harmed from these policies, customs, and practices. WOOD endured assaultive conduct, unlawful seizures, unlawful searches, and the initiation of false criminal charges against her. WOOD's 4th and 14th Amendment rights were violated. CITY's policies, customs, and practices were approved and ratified by policymaking officials, and implemented with a deliberate indifference to the violation of citizens' rights in contravention of clearly established law.

**(11)** BEXAR COUNTY, TEXAS is a local government entity. COUNTY runs and oversees the Bexar County Jail. The Jail is a correctional facility which holds persons convicted of Misdemeanor offenses, hold suspects who are newly arrested or who can't make bail, and holds convicted felons awaiting transfer to state prisons. COUNTY is responsible for the Bexar County

Jail's staffing and operation under the color and authority of Texas Law. COUNTY hires Jailers to run the Bexar County Jail, and to oversee the prisoners, inmates, and detainees. COUNTY is required to provide for arrested persons, inmates, and detainees in the Bexar County Jail. These requirements include adequate medical care, adequate conditions of confinement, and provisions for food and sanitary needs. COUNTY is responsible to protect the prisoners, inmates, and detainees from gratuitous punishment, excessive force, and neglect from Bexar County Jail staff. COUNTY fails in these regards.

(12) COUNTY has official policies, customs, and practices which serve to violate prisoner, inmate, and detainee rights. COUNTY has a policy, custom, or practice of providing inadequate medical care. Jail inhabitants are denied, deprived, or delayed medical attention because of deliberate indifference from COUNTY staff. COUNTY has a policy, custom, or practice of providing inadequate conditions of confinement. COUNTY neglects the Jail inhabitants and population. No consideration is given for inmate hygiene, inmate diet, or comfort. The Bexar County Jail inhabitants suffer deprivations of food, an inattention to hygiene, and endure conditions of extreme cold. COUNTY has a policy, custom, or practice of a failure to Train. Jail staff are not knowledgeable about the various resources inmates require. Jail staff are not trained to readily provide these necessary services. COUNTY has a policy, custom, or practice of conducting intrusive body cavity searches. Detainees are subjected to invasive and intrusive explorations of their genitalia and orafices. These searches are conducted with the expectation not to discover any contraband or weaponry. Rather, these searches are performed to humiliate and degrade the detainees. The results are Constitutional violations of prisoner, inmate, and detainee rights. The Jail population suffers deprivations of food, hygiene, medical care, and warm garb. WOOD was harmed from these COUNTY policies, customs, and practices, which violated her 14th Amendment rights. WOOD endured physical abuse, denials of medical care, invasive searches, denials of sustenance, and was exposed to an unhealthy, cold climate. COUNTY's policies, customs, and practices are implemented by final policymakers with a

deliberate indifference to the resulting Constitutional violations, in contravention of clearly established law.

**(13)**   The baseless criminal charge of Misdemeanor Possession of Marijuana 0-2 oz. in Cause No. 609078 in Bexar County, Texas was dismissed by the Bexar County District Attorney's Office on May 30, 2019, on its own volition (Ex. A). The deadly force, the physical abuse, the baseless charge, the deprivations at the jail, and the mental anguish of combatting false charges wreaked havoc on Plaintiff Amanda Wood. The combined Constitutional violations turned an innocent gathering of friends into an odyssey of oppression and torment. Plaintiff was harmed, and continues to be harmed in physical manifestations to her nerves, her wrists, her shoulders, and her psyche. Defendants ORTIZ and MARTINEZ played the part of villainous catalysts, implementing CITY's malevolent *Monell* policies. Subsequently, COUNTY's Jail staff carried out a *Monell* regimen synonymous with medieval torture. The collective conduct of the named Defendants cannot be allowed to endure and perpetuate in a civilized society.

## VII.               LEGAL CLAIMS FOR RELIEF

### 42 U.S.C. 1983 CLAIMS AGAINST J. ORTIZ

### (1)   4TH AMENDMENT UNREASONABLE SEIZURE (DEADLY FORCE)

Plaintiff WOOD experienced and endured an unlawful violation of her 4th Amendment right to be free from unreasonable seizures. WOOD was seized for 'having a smart mouth.' ORTIZ used deadly force against WOOD, in the form of a loaded gun pointed at her head and face. WOOD was not a threat to Defendants ORTIZ and MARTINEZ. In fact, WOOD committed no criminal offenses and did not resist arrest. ORTIZ' use of deadly force was intentional, unlawful, and unreasonable. In WOOD's situation, no force was necessary, much less deadly force. The

use of deadly force against a passive suspect violates clearly established law, of which a reasonable officer would know. WOOD experienced terror, fear, and apprehension at being accosted with ORTIZ's firearm. ORTIZ acted under the cloak and authority of Texas law as a licensed Peace Officer.

## (2) 4TH AMENDMENT UNREASONABLE SEIZURE (EXCESSIVE FORCE)

ORTIZ also used more conventional excessive force against WOOD, intentionally jerking, shoving, contorting, and pushing WOOD during the encounter at Henry's house. WOOD was seized for 'having a smart mouth.' ORTIZ intentionally tightened the cuffs on WOOD's wrists to cause pain, and contorted WOOD's shoulders behind her back to cause suffering. WOOD did not resist arrest or fail to comply with ORTIZ' commands. These intentional acts served to violate WOOD's 4th Amendment rights to be free from unreasonable seizures. WOOD experienced physical pain from ORTIZ' misconduct. ORTIZ' use of excessive force against a handcuffed and passive suspect constituted an unreasonable seizure, and a violation of clearly established law which a reasonable officer would have known. ORTIZ acted under the cloak and authority of Texas law as a licensed Peace Officer.

## (3) 4TH AMENDMENT UNREASONABLE SEARCH (WOOD'S PERSON)

ORTIZ had no lawful basis to contact, seize, or search WOOD. WOOD was merely arrested 'for having a smart mouth.' Thus, ORTIZ had no lawful basis to search WOOD's person and wrest her car keys and personal effects away. ORTIZ commandeered WOOD's personal effects including her wallet, personal identification, money, jewelry, cell phone, and car keys. WOOD had to pay an administrative fee to have her property returned, of which some items were never returned by SAPD. WOOD experienced the unreasonable and unlawful search of her person for having a personality ORTIZ disliked. ORTIZ' search of WOOD's person constituted an unreasonable search under the 4th Amendment, of which a reasonable officer would know violated clearly established law. ORTIZ' search violated clearly established law, acting under the color and authority of Texas law as a licensed Peace Officer.

11

**(4)    4ᵗʰ AMENDMENT UNREASONABLE SEARCH (WOOD'S CAR)**

WOOD was unlawfully seized for 'having a smart mouth.' In his unlawful search of

WOOD's person, ORTIZ forcefully removed WOOD's car keys. WOOD was arrested outside of

her locked automobile, and far removed from it. ORTIZ used WOOD's car keys to enter

WOOD's vehicle and illegally search for contraband, over WOOD's objections. ORTIZ

rummaged through WOOD's vehicle, displacing personal property and the auto's contents. The

actions of searching an arrested person's locked automobile without a warrant or consent

constituted an unreasonable search under the 4ᵗʰ Amendment, of which a reasonable officer

would have known. ORTIZ violated clearly established law, acting under the color and authority

as a licensed Texas Peace Officer.


**(5)    14ᵗʰ AMENDMENT DUE PROCESS**

ORTIZ knowingly and intentionally filed false criminal charges against WOOD, with the

intention that WOOD lose her liberty and property freedoms. ORTIZ desired WOOD to

receive a jail sentence and monetary penalties from the bogus Marijuana charge. A reasonable

officer would know it was unlawful and a violation of a person's 14ᵗʰ Amendment right to file

false criminal charges against a suspect. ORTIZ displayed a deliberate indifference to WOOD's

Constitutional rights, and his actions of unlawfully seizing, searching, falsifying evidence, and

initiating false charges would shock the conscience of any normal person. ORTIZ acted under

the cloak and authority of Texas law as a licensed Peace Officer.


## 42 U.S.C. 1985 CLAIM AGAINST J. ORTIZ


**(6)    CONSPIRACY TO VIOLATE WOOD'S CIVIL RIGHTS**

ORTIZ conspired with MARTINEZ to violate WOOD's civil rights, by denying her the

equal protection of the law, and illegally arresting her. ORTIZ conspired with MARTINEZ to

initiate false criminal charges against WOOD, which were dismissed by the State. ORTIZ and

MARTINEZ conspired to deprive WOOD of her life, liberty, and property interests via the mechanism of filing false criminal charges against WOOD. ORTIZ and MARTINEZ physically seized and arrested WOOD, and verbally intimated physical threats for the failure to produce nonexistent contraband. WOOD's 4th and 14th Constitutional Amendment rights were violated. ORTIZ' actions constituted violated clearly stablished law, of which a reasonable officer would have known. ORTIZ acted under the color and authority of Texas law as a licensed Peace Officer. WOOD suffered harm in deprivations of her life, liberty, and property interests, experiencing an unreasonable arrest, search, and criminal prosecution.

## 42 U.S.C. 1983 CLAIMS AGAINST MARTINEZ

## (1)  4TH AMENDMENT UNREASONABLE SEARCH (WOOD'S PERSON)

MARTINEZ had no lawful basis to contact, seize, or search WOOD. WOOD was merely arrested 'for having a smart mouth.' Thus, MARTINEZ had no lawful basis to search WOOD's person and wrest her car keys and personal effects away. MARTINEZ helped ORTIZ commandeer WOOD's personal effects including her wallet, personal identification, money, jewelry, cell phone, and car keys. WOOD had to pay an administrative fee to have her property returned, of which some items were never returned by SAPD. WOOD experienced the unreasonable and unlawful search of her person for having a personality ORTIZ disliked. MARTINEZ' search of WOOD's person constituted an unreasonable search under the 4th Amendment, of which a reasonable officer would know violated clearly established law. MARTINEZ' search violated clearly established law, acting under the color and authority of Texas law as a licensed Peace Officer.

**(2)    4th AMENDMENT UNREASONABLE SEARCH (WOOD'S CAR)**

WOOD was unlawfully seized for 'having a smart mouth.' In her unlawful search of
WOOD's person, MARTINEZ and ORTIZ forcefully removed WOOD's car keys. WOOD was
arrested outside of her locked automobile, and far removed from it. MARTINEZ and ORTIZ
used WOOD's car keys to enter WOOD's vehicle and illegally search for contraband, over
WOOD's objections. MARTINEZ rummaged through WOOD's vehicle, displacing personal
property and the auto's contents. The actions of searching an arrested person's locked
automobile without a warrant or consent constituted an unreasonable search under the 4th
Amendment, of which a reasonable officer would have known. MARTINEZ violated clearly
established law, acting under the color and authority as a licensed Texas Peace Officer.

**(3)                     14th AMENDMENT DUE PROCESS**

MARTINEZ knowingly and intentionally filed false criminal charges against WOOD, with
the intention that WOOD lose her liberty and property freedoms. MARTINEZ desired WOOD to
receive a jail sentence and monetary penalties from the bogus Marijuana charge. A reasonable
officer would know it was unlawful and a violation of a person's 14th Amendment right to file
false criminal charges against a suspect. MARTINEZ displayed a deliberate indifference to
WOOD's Constitutional rights, and her actions of unlawfully seizing, searching, falsifying
evidence, and initiating false charges would shock the conscience of any normal person.
MARTINEZ acted under the color and authority of Texas law as a licensed Peace Officer.

**<u>42 U.S.C. 1985 CLAIM AGAINST MARTINEZ</u>**

**(4)          CONSPIRACY TO VIOLATE WOOD'S CIVIL RIGHTS**

MARTINEZ conspired with ORTIZ to violate WOOD's civil rights, by denying her the

14

equal protection of the law, and illegally arresting her. MARTINEZ conspired with ORTIZ to initiate false criminal charges against WOOD, which were dismissed by the State. MARTINEZ and ORTIZ conspired to deprive WOOD of her life, liberty, and property interests via the mechanism of filing false criminal charges against WOOD. MARTINEZ and ORTIZ physically seized and arrested WOOD, and verbally intimated physical threats for the failure to produce nonexistent contraband. WOOD's 4th and 14th Constitutional Amendment rights were violated. MARTINEZ' actions constituted violated clearly stablished law, of which a reasonable officer would have known. MARTINEZ acted under the color and authority of Texas law as a licensed Peace Officer. WOOD suffered harm in deprivations of her life, liberty, and property interests, experiencing an unreasonable arrest, search, and criminal prosecution.

## 42 U.S.C. 1983 CLAIMS AGAINST BEXAR COUNTY JAILER JOHN DOE

### (1)                14TH AMENDMENT EXCESSIVE FORCE

COUNTY Jailer JOHN DOE yanked, jerked, and shoved WOOD in and out of her chair. WOOD was raised up, and slammed down. JOHN forcefully twisted WOOD's upper limbs and contorted them. JOHN's excessive force constituted punishment violative of a pretrial detainee's 14th Amendment rights to be free from unreasonable seizures. JOHN's infliction of force and punishment to WOOD served no legitimate law enforcement purposes. JOHN inflicted excessive force with extreme deliberate indifference to WOOD's Constitutional rights. JOHN's actions violated clearly established law which would shock the conscience of any normal person. JOHN acted under the color and authority of law as a licensed Texas Jailer.

**(2)**  **SUPERVISOR LIABILITY**

JOHN had supervisory status at the Bexar County Jail. Thus, JOHN was responsible for his own conduct, and for any malfeasance he directed his underlings to perform. JOHN personally committed excessive force against WOOD, and placed her in an isolated environment devoid of food, water, medical care, and warmth. JOHN directed the body cavity search of WOOD's person. Essentially, JOHN separated WOOD from the general populace, and in an area where he could violate WOOD's rights at will. JOHN was deliberately indifferent to WOOD's 14th Amendment rights to bodily integrity, freedom from unreasonable seizures, freedom from unreasonable searches, and rights to medical care and adequate conditions of confinement. WOOD's total experience at the Bexar County Jail was one of persecution, violation, and deprivation. JOHN's conduct would shock the conscience of any ordinary person, and violated clearly established law. JOHN acted under the color and authority of Texas law as a licensed Jailer, and displayed a deliberate indifference to the violations of Wood's Constitutional rights.

**(3)**  **UNREASONABLE SEARCH (BODY CAVITY SEARCH)**

JOHN recommended a strip and body cavity search of WOOD upon her arrival at the Bexar County Jail. WOOD was not believed to be stowing any weapons or contraband inside her body. Yet, JOHN suggested JANE probe, prod, and violate WOOD's body. WOOD was forced to strip and experienced a substantive violation of her body and genitalia. WOOD experienced discomfort, fear, and embarrassment while being examined. A reasonable officer would have known that Wood was charged with a Misdemeanor offense of a small quantity of Marijuana, and would not be regarded as a dangerous detainee or a smuggler. JOHN displayed a deliberate indifference to WOOD's 14th Amendment Constitutional rights to bodily integrity, and freedom from unreasonable searches. JOHN's conduct would shock the conscience of any ordinary person, and contravened clearly established law. JOHN acted under the color and authority of Texas law as a licensed Jailer.

16

## 42 U.S.C. 1983 CLAIMS AGAINST JAILER JANE

### (1)        UNREASONABLE SEARCH (BODY CAVITY SEARCH)

JOHN recommended a strip and body cavity search of WOOD upon her arrival at the Bexar County Jail. WOOD was not believed to be stowing any weapons or contraband inside her body. Yet, JOHN suggested JANE probe, prod, and violate WOOD's body. WOOD was forced to strip and experienced a substantive violation of her body and genitalia. JANE probed WOOD's body with vigor. WOOD was forced to squat in the nude, and spread her genitalia and butt cheeks wide open. WOOD experienced discomfort, fear, and embarrassment while being examined. A reasonable officer would have known that Wood was charged with a Misdemeanor offense of a small quantity of Marijuana, and would not be regarded as a dangerous detainee or a smuggler. JANE displayed a deliberate indifference to WOOD's 14th Amendment Constitutional rights to bodily integrity, and freedom from unreasonable searches. JANE's conduct would shock the conscience of any ordinary person, and contravened clearly established law. JANE acted under the color and authority of Texas law as a licensed Jailer.

## 42 U.S.C. 1983 MONELL CLAIMS AGAINST THE CITY OF SAN ANTONIO

### (1)                    FAILURE TO TRAIN

The CITY has a policy, custom, or practice of a Failure to Train. SAPD Officers are not properly trained in rudimentary Constitutional law, 4th Amendment procedures, or legal uses of force. This results in illegal contacts, unreasonable seizures, unreasonable searches, and gratuitous displays of physical force. The public is harmed via invasions into their privacy, unlawful arrests, the seizures of property, and harm through physical violence by SAPD Officers. These policies, customs, and practices are approved and implemented by final policymakers with a deliberate indifference to the resulting Constitutional harms. These policies, customs, and

practices violate clearly established law. WOOD was harmed through excessive force, an unlawful arrest, and the search of her property. WOOD suffered violations of her 4th and 14th Constitutional Amendment rights.

**(2)**                         **FAILURE TO SUPERVISE**

The CITY has a policy, custom, or practice of a Failure to Supervise. SAPD Officers are not properly supervised. The rank and file are free to do as they wish while on patrol. This results in unlawful arrests, gratuitous excessive force, unreasonable searches, and the assertion of false criminal charges against the public. Patrol Officers like ORTIZ and MARTINEZ are virtually immune from censure or reprimand by the CITY. This creates a situation where the ostensible enforcers of law become the lawless. These policies, customs, and practices are approved and implemented by final policymakers with a deliberate indifference to the resulting Constitutional harms. These policies, customs, and practices violate clearly established law. WOOD was harmed through excessive force, an unlawful arrest, and the search of her property while ORTIZ and MARTINEZ avoided accountability. WOOD suffered violations of her 4th and 14th Constitutional Amendment rights.

**(3)**                         **FAILURE TO DISCIPLINE**

CITY has a policy, custom, or practice of a Failure to Discipline. SAPD Officers are not held accountable for their excessive uses of force, from unreasonable seizures, or from the initiation of false criminal complaints against citizens. Citizens are arrested for no reason, or invalid reasons. Passive citizens are threatened with force by SAPD Officers. SAPD Officers are allowed to initiate criminal complaints with false allegations, or with illegally seized evidence. These policies, customs, and practices are approved and implemented by final policymakers with a deliberate indifference to the resulting Constitutional harms. These policies, customs, and practices violate clearly established law. WOOD was harmed through excessive force, an unlawful arrest, and the search of her property. WOOD suffered violations of her 4th and 14th Amendment rights.

## 42 U.S.C. 1983 MONELL CLAIMS AGAINST BEXAR COUNTY, TEXAS

**(1)**　　　　　　　　　**INADEQUATE MEDICAL CARE**

COUNTY has a policy, custom, or practice of Inadequate Medical Care. The Bexar County Jail population is neglected as a whole. Inmates, prisoners, and detainees are denied medical care altogether, or grossly delayed medical attention. COUNTY fails to provide staff which identify and respond to inmate needs such as pain, discomfort, or outward physical injury for mundane matters. For severe medical conditions, the COUNTY does not have the means or wherewithal to diagnose those problems. Beyond tardy medical attention, COUNTY fails to dispense proper medications when medical situations require them. The Jail population suffers needlessly due to deliberate indifference, apathy, and inattention. WOOD suffered physical harm and pain from COUNTY's failure to diagnose or treat her injuries to her wrists and shoulders. WOOD's handcuffs cut into her flesh and nerves, while her shoulders were twisted and contorted behind her back. These policies, customs, and practices are approved and implemented by final policymakers with a deliberate indifference to the resulting Constitutional harms. These policies, customs, and practices violate clearly established law. WOOD suffered violations of her 14th Amendment Constitutional rights. Such conduct would shock the conscience of any ordinary person.

**(2)**　　　　　　　**INADEQUATE CONDITIONS OF CONFINEMENT**

COUNTY has a policy, custom, or practice of Failing to Provide Adequate Conditions of Confinement. The Jail population is neglected concerning daily requirements of sustenance, hygiene, and comfort. In accordance with these policies, WOOD was isolated and denied food, denied water, denied restroom facilities, and denied warm clothing during her entire overnight stay. WOOD grew faint from the lack of sustenance or water. WOOD experienced great discomfort from not being able to eliminate bodily wastes, and from Jail temperatures which hovered in the low 60's. This resulted in medieval conditions which served no purpose other than to provide punishment. These policies, customs, and practices are approved and implemented by

final policymakers with a deliberate indifference to the resulting Constitutional harms. These policies, customs, and practices violate clearly established law. WOOD suffered violations of her 14th Amendment Constitutional rights. Such conduct would shock the conscience of any ordinary person.

### (3)                         FAILURE TO TRAIN

COUNTY has a policy, custom, or practice of a Failure to Train. Bexar County Jail staff are not trained to care for the Jail population, or to identify inmate needs. Thus, the Jail population suffers deprivations or denials of food, medical care, and conditions of confinement. Inmates require the basic necessities of life because they cannot provide for themselves. Inmates require food, water, shelter, clothing, hygiene products, and medical care on a daily basis. COUNTY is loathe or slow to provide these resources, and is deliberately indifferent to the resulting Constitutional harms. WOOD experienced and suffered denials of food, water, medical care, sanitation, and shelter. WOOD was placed in an environment where none of her biological needs were met. The resulting conditions serve to provide a punitive environment. These policies, customs, and practices are approved and implemented by final policymakers with a deliberate indifference to the resulting Constitutional harms. These policies, customs, and practices violate clearly established law. WOOD suffered violations of her 14th Amendment Constitutional rights. Such conduct would shock the conscience of any ordinary person.

### (4)                      INTRUSIVE BODY SEARCHES

COUNTY has a policy, custom, or practice Intrusive Body Searches. Body cavity searches are conducted without justification or fail to serve a valid law enforcement interest. Invasive intrusions into detainee genitalia and orafices is readily sanctioned. WOOD was charged with a minor criminal offense, which did not denote smuggling or the possession of weapons. WOOD suffered physical intrusions into her private body regions, and a mortifying physical

20

manipulation of her nude limbs and torso. The body cavity search served no purpose other than to humiliate and degrade WOOD. These policies, customs, and practices are approved and implemented by final policymakers with a deliberate indifference to the resulting Constitutional harms. These policies, customs, and practices violate clearly established law. WOOD suffered violations of her 14th Amendment Constitutional rights. Such conduct would shock the conscience of any ordinary person.

# VIII.                             DAMAGES

## A.                   DAMAGES FROM DEFENDANT ORTIZ

WOOD seeks Compensatory damages from ORTIZ to compensate her for her injuries and the resulting false criminal charge in the amount of $7,000,000. WOOD seeks Punitive Damages from ORTIZ to dissuade him from committing such acts in the future.

## B.                   DAMAGES FROM DEFENDANT MARTINEZ

WOOD seeks Compensatory damages from MARTINEZ to compensate her for her injuries and the resulting false criminal charge in the amount of $5,000,000. WOOD seeks Punitive Damages from MARTINEZ to dissuade her from committing such acts in the future.

## C.                   DAMAGES FROM DEFENDANT CITY OF SAN ANTONIO

WOOD seeks Compensatory damages from CITY to compensate her for her injuries and in the amount of $5,000,000.

## D.          DAMAGES FROM DEFENDANT JAILER JOHN DOE

WOOD seeks Compensatory damages from JOHN DOE to compensate her for her injuries in the amount of $3,000,000. WOOD seeks Punitive Damages from JOHN DOE to dissuade him from committing such acts in the future.

## E.          DAMAGES FROM DEFENDANT JAILER JANE DOE

WOOD seeks Compensatory damages from JANE DOE to compensate her for her injuries in the amount of $2,000,000. WOOD seeks Punitive Damages from JANE DOE to dissuade her from committing such acts in the future.

## F.       DAMAGES FROM DEFENDANT BEXAR COUNTY, TEXAS

WOOD seeks Compensatory damages from COUNTY to compensate her for her injuries and in the amount of $5,000,000.

## IX.                    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff AMANDA WOOD respectfully prays for the following relief:

a. AWARD Plaintiff all of the monetary damages sought in her Complaint;

b. AWARD Plaintiff her Attorney fees and legal expenses;

c. GRANT Plaintiff any other relief she may be entitled to, in equity or at law.

## X.                  JURY DEMAND

Pursuant to the Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all claims and issues so triable.

Respectfully Submitted,

Amanda Wood
Pro Se
1402 Madrid
San Antonio, TX 78237
aw6627357@gmail.com
(210) 321-2567

February 26, 2021

# EXHIBIT A

**Certified Copy of Dismissal Order in Cause No. 609078 (May 30, 2019)**

CAUSE NO: _609078_

OFFENSE: _Poss. Marihuana O-2 oz_

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE ~~DISTRICT COURT~~ |
| V. | § | COUNTY COURT NO. _5_ |
| _Amanda Wood_ | § | BEXAR COUNTY, TEXAS |

## MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES JOE D. GONZALES, Criminal District Attorney of Bexar County, Texas by and through the undersigned Assistant Criminal District Attorney, and respectfully requests the Court to dismiss the above entitled and numbered criminal action for the following reason:

\_\_\_\_\_ 0604 – The Defendant was convicted (or sentence deferred) in another case or count.
\_\_\_\_\_ 0606 – The Defendant is in custody in another jurisdiction.
\_\_\_\_\_ 0608 – Old case, no arrest.
\_\_\_\_\_ 0609 – The Defendant was granted immunity.
\_\_\_\_\_ 0610 – Motion to suppress granted.
\_\_\_\_\_ 0611 – Insufficient evidence.
\_\_\_\_\_ 0612 – Co-Defendant convicted, insufficient evidence as to this Defendant.
\_\_\_\_\_ 0614 – A necessary and material witness is missing.
\_\_X\_\_ 0615 – Other. (see explanation below)
\_\_\_\_\_ 0617 – Case re-indicted/re-filed.
\_\_\_\_\_ 0626 – The law enforcement agency failed to submit necessary evidence.
\_\_\_\_\_ 0629 – Complainant requested case be dismissed.
\_\_\_\_\_ 0630 – The Defendant died.
\_\_\_\_\_ 0639 – Defendant completed a pretrial diversion program.
\_\_\_\_\_ 0672 – Rejected extraneous offense.
\_\_\_\_\_ 0673 – Rejected multi-count charging document filed.
\_\_\_\_\_ 0681 – Further investigation.
\_\_\_\_\_ 0682 – Restitution paid in full.
\_\_\_\_\_ 0699 – Created in error.

EXPLANATION: _State declined to Prosecute_

WHEREFORE, PREMISES CONSIDERED on this the _30th_ day of _May_, 201_9_, it is requested that the above entitled cause be dismissed.

Respectfully submitted,

_Oliver Flory_

Assistant Criminal District Attorney
Bexar County, Texas
State Bar Number _24096567_

## ORDER

The foregoing motion having been presented to me on this the _30th_ day of _May_, 2019, and the same having been considered, it is ORDERED, ADJUDGED AND DECREED that said above entitled and numbered cause be and the same is hereby dismissed.

Presiding Judge, Bexar County, Texas



STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office
ATTESTED:

JAN 2 1 2021

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY TEXAS

BY: 
_____
DEPUTY