IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AMANDA WOOD,<br>　　　　*Plaintiff* | §<br>§<br>§ | |
| | § | SA-21-CV-00187-XR |
| -vs- | §<br>§ | |
| CITY OF SAN ANTONIO, MARTHA<br>MARTINEZ, SAPD OFFICER; J. ORTIZ,<br>SAPD OFFICER; JOHN DOE, JAIL<br>SUPERVISOR; AND JANE DOE,<br>DEPUTY JAILER;<br>　　　　*Defendants* | §<br>§<br>§<br>§<br>§<br>§ | |

## ORDER

On this date, the Court considered Plaintiff Amanda Wood's motions to exclude the expert testimony and report of Craig Miller on behalf of San Antonio Police Department ("SAPD") Officers Martha Martinez and Jimmy Ortiz (ECF No. 40) and the City of San Antonio (ECF No. 41), the SAPD Officers' response (ECF No. 44), the City's response (ECF No. 42), and Plaintiff's replies thereto (ECF Nos. 45, 46). After careful consideration, the Court issues the following order.

## BACKGROUND

Plaintiff Amanda Wood filed this civil action under 42 U.S.C. §§ 1983, 1985 for damages arising from her arrest outside of a friend's home in the early hours of February 27, 2019. ECF No. 1. Plaintiff alleges that her friend, identified only as "Henry," was welding a broken section of the fence in his front yard when a SAPD cruiser pulled up to the home, with flashing lights and a blaring siren. *Id.* at 5. Officers Martinez and Ortiz stepped out of the cruiser, and Ortiz immediately pulled his service weapon on Henry. *Id.* Afraid that Ortiz might shoot her friend, Plaintiff identified herself and explained that Henry owned the property. *Id.* Ortiz turned the gun to Plaintiff's head. *Id.* Henry then ushered his wife and grandchildren back into the home. *Id.*

While Henry was back inside the home, Plaintiff alleges that she asked Ortiz why he had pointed a gun at their heads, and that Ortiz replied that "it was suspicious working on a fence that early." *Id.* Henry returned to the front yard. *Id.* When Ortiz asked why he had "run off," Henry responded that Ortiz had pointed a gun at him, and he was worried about his family. *Id.* at 5–6. Plaintiff alleges that she "took [Ortiz] to task for pointing a loaded weapon at their heads, and for overreacting to an innocuous situation," and told him that he "had no right to intrude upon them and threaten them with a gun." *Id.* at 6. Ortiz then arrested Plaintiff, cuffed her hands behind her back, patted her down, removed her keys and other items from her pockets. *Id.* Plaintiff alleges that the handcuffs were too tight and cut into her wrists and that being cuffed with her hands behind her back was causing her shoulder pain. *Id.* She asked Ortiz to loosen the cuff and to re-cuff her with her in front of her body, but he refused. *Id.* Plaintiff alleges that when she asked Ortiz why she was being arrested, he replied, "[B]ecause you have a smart mouth." *Id.*

Over Plaintiff's objections, Ortiz unlocked her car, which was parked in Henry's yard, and both Ortiz and Martinez entered the vehicle and began to rummage around. Plaintiff alleges that the Officers made multiple comments about the untidy state of the vehicle and that, because they could not find any contraband, Ortiz "concocted 'the discovery of .1 grams of Marijuana.'" *Id.* He placed Plaintiff in the cruiser and took her to the Magistrate's Office, where he allegedly grabbed Plaintiff, jerked her around, tightened the handcuffs even further, and encouraged jail staff to be rough with her because she was a "drug smuggler." *Id.* at 6–7. Plaintiff alleges that she was then strip-searched, cavity-searched, and held for 16 hours in a frigid, isolated room, where she was not allowed to drink water or use the restroom, her hands still cuffed behind her back. *Id.* at 7. She was charged with misdemeanor possession of marijuana and released. On May 30, 2019, the charge was voluntarily dismissed by the Bexar County Assistant District Attorney. *Id.* at 25.

Wood filed this suit on February 26, 2021, against the City of San Antonio, SAPD Officer Martha Martinez, SAPD Officer J. Ortiz, Bexar County, Texas, John Doe Jail Supervisor, and Jane Doe Deputy Jailer ("Defendants") claiming violations of her Fourth Amendment right against unreasonable search and seizure and violation of her Fourteenth Amendment right to due process. *See* ECF No. 1. Plaintiff cites the Defendants' physical abuse of her, her arrest on a baseless charge, deprivations she experienced while in jail, and mental anguish resulting from the Plaintiff's defense against the false charges as the basis of her claims. *See id.* ¶ 13.

The City and the Officers have designated Craig Miller as an expert in law enforcement matters, including training, supervision, tactics, discipline, use of force, arrest, search and seizure and all other facets of law enforcement. *See* ECF No. 39 at 3; *see also* ECF No. 38 at 2. Plaintiff now moves to exclude Miller from testifying as an expert in this case, arguing that he fails to satisfy the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993) and Rule 702 of the Federal Rules of Evidence on the following bases:

> (1) [H]e is not academically qualified to comment on the law. (2) He is biased. (3) Miller's misstatements of law and 4th Amendment principles will confuse a jury. (4) He doesn't mention or address the most severe of Plaintiff's allegations. (5) Miller's foundation is flawed because he relies upon Police practices as his guide, rather than Court decisions. (6) Miller doesn't take into consideration the Plaintiff is telling the truth, and his clients are lying. (7) The individual Police Defendants, Officer Jimmy Martinez and Martha Martinez, can testify for themselves, and explain their conduct and the basis for it. The City of San Antonio can designate someone to testify on their behalf about their policies and practices.

ECF No. 40 at 3; ECF No. 41 at 3.[1]

---

[1] The Officers have also designated attorney Mark Kosanovich as an expert in the reasonableness and necessity of any attorney's sought in connection with this litigation. ECF No. 38 at 1–2. Plaintiff objects that this designation creates a conflict of interest by giving Kosanovich a personal stake in the outcome of the proceedings and is unnecessary considering the Court's familiarity with the lodestar rubric for determining awards of attorney's fees. ECF No. 40 at 11–12. While the Court tends to agree that Kosanovich's testimony will not be required, Plaintiff's objections are premature at this stage given that, in order to recover attorney's fees, the Officers must not only prevail on the merits but also establish that Plaintiff's § 1983 action was "frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). Should the Officers establish that attorney's fees are warranted, the Court will consider any renewed objections to Kosanovich's testimony at that time.

## DISCUSSION

**I.    Legal Standard**

Rule 702 of the Federal Rules of Evidence allows a witness "who is qualified as an expert" to testify if:

    a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    b)    the testimony is based on sufficient facts or data;

    c)    the testimony is the product of reliable principles and methods; and

    d)    the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Supreme Court's decision in *Daubert*, 509 U.S. at 592, provides the analytical framework for determining the admissibility of expert testimony. *Daubert* requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Id*. at 589. As a preliminary matter, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702). If the expert is qualified, a court must follow *Daubert*'s analytical framework to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Id*. at 592–93. The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The point of this inquiry "is to make certain that an expert, whether basing

testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.

The relevance inquiry requires the Court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401.

Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000). A trial court's role as gatekeeper under *Daubert* "is not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (citing Rule 702 advisory committee's note). Thus, in determining the admissibility of expert testimony, the court should approach its task "with the proper deference to the [factfinder]'s role as the arbiter of disputes between conflicting opinions." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**II.     Analysis**

As a preliminary matter, the Court cannot discern from Plaintiff's motions which of Miller's opinions she seeks to challenge. Plaintiff fails to specifically identify any of Miller's opinions in the motions, instead relying on general characterizations of Miller's report and resume—neither of which are attached as exhibits. This deficiency alone deprives the Court of its ability to assess the reliability of Miller's opinions. *See Basanti v. Metcalf*, 35 F. Supp. 3d 1337,

1347 (D. Col. 2014) (holding the court has insufficient basis upon which to exclude an expert opinion because the proponent of the motion fails to attach the expert's report and does not cite to any deposition testimony where the expert clearly expresses an opinion). Nonetheless, the Court will address Plaintiff's arguments, which challenge his academic qualifications, the foundation for his legal conclusions, and the factual basis for his analysis. Each of these attacks fails, for the reasons set out below.

First, Plaintiff's argument that Miller is "is not academically qualified to comment on the law," ECF No. 40 at 3; ECF No. 41 at 3, is misplaced, given that he has not been designated as an expert on the law. *See* ECF No. 39 at 3 (designating Miller as an expert in law enforcement matters, including training, supervision, tactics, discipline, use of force, arrest, search and seizure and all other facets of law enforcement). The Court is satisfied that Miller is qualified as an expert in law enforcement and police practices. *See Cooks*, 589 F.3d at 179. Miller is a retired Chief of Police for the Dallas Independent School District, with a thirty-year career in law enforcement and particular knowledge regarding police training. He holds a bachelor's degree in Criminal Justice and is a certified instructor for the Texas Commission on Law Enforcement. *See* ECF No. 44-1 at 2–3. Miller has been found qualified to testify as an expert in police practice and procedure in other cases. *See Moreno v. Northside I.S.D.*, No. SA-11-CV-746-XR, 2013 WL 3716531, at *7 (W.D. Tex. July 12, 2013) (denying a motion to strike Miller as an expert), *Orr v. Copeland*, No. 1:14-CV-212-LY, 2015 WL 13216863, at *3 (W.D. Tex. Dec. 23, 2015) (explaining Miller's resume qualifies him as an expert and "Plaintiff's criticism of Miller's testimony can be adequately addressed at trial through cross-examination."). Miller's expert report, which is attached as an exhibit to Defendants' responses, indicates that he may testify as to his opinions regarding Officers

Martinez and Ortiz's training and adherence to SAPD procedures, SAPD's Supervision and Discipline of Police Officers, and the reasonableness of Wood's arrest. *See* ECF 44-2 at 4–11.

To the extent Plaintiff seeks to challenge Miller's "misstatements of law," the Court again observes that he was not designated as a legal expert. More importantly, experts are not permitted to testify as to legal conclusions because that would invade the province of the Court. While an expert opinion "is not objectionable just because it embraces an ultimate issue" to be decided by the trier of fact, FED. R. EVID. 704(a), experts may not offer legal opinions or advise the Court on how the law should be interpreted or applied to the facts in the case. *See Estate of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999); *see also Askanase v. Fatjo*, 130 F.3d 657, 672–73 (5th Cir. 1997). Defendants are cautioned that Miller may not offer legal opinions or advise the Court on how the law should be interpreted or applied to the facts in the case. However, "[i]t is impossible to know, at this time, the point at which [the witness]'s testimony crosses from permissible expert opinions into the realm of inadmissible legal opinions, and the Court must hear and assess the evidence before drawing that line." *Rader v. Bruister*, No. 4:10cv95–DPJ–FKB, 2013 WL 6805403, at *16 (S.D. Miss. Dec. 20, 2013). The Court will address the issue further at trial.

Finally, Plaintiff argues that Miller's opinions are not supported by the facts, suggesting that "[h]e is biased," that he fails to "mention or address the most severe of Plaintiff's allegations," and that he fails to "take into consideration the Plaintiff is telling the truth, and [that Defendants] are lying." ECF No. 40 at 3; ECF No. 41 at 3. These challenges to the factual basis for Miller's opinions are best addressed through vigorous cross-examination and the presentation of contrary evidence. *Daubert*, 509 U.S. at 596. Such attacks on the "bases" of an expert opinion "affect the weight to be assigned to that opinion rather than its admissibility" and should also "be left for the jury's consideration." *Viterbo*, 826 F.2d at 422.

## CONCLUSION

Accordingly, the Court hereby **ORDERS** that Plaintiff's motions to exclude the testimony of Craig Miller (ECF Nos. 40, 41) are **DENIED WITHOUT PREJUDICE** to re-urging in the form of appropriate objections at trial.

It is so **ORDERED**.

**SIGNED** this 25th day of April, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE